UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JACQUELINE WILLIAMS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-139 |
| | § | |
| KB HOME, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Defendant KB Home's motion to dismiss asks this Court to resolve several procedural and substantive issues presented by Plaintiffs' proposed employment discrimination class action. Having considered the briefing, case law, and arguments of counsel, KB Home's motion is **GRANTED IN PART** and **DENIED IN PART** for the reasons that follow.

## I. BACKGROUND

Plaintiffs are African-Americans who worked as sales representatives for KB Home in the greater Houston area. Once each Plaintiff was hired, KB Home assigned him or her to work at one of its numerous onsite sales offices in the area. The central allegation of this case is that KB Home made the location assignments in a discriminatory manner, assigning Plaintiffs and other African American salespersons to locations where the population was predominantly African American and Hispanic. Plaintiffs allege that the homes in these areas were less

expensive and that the prospective buyers had lower incomes and credit scores, making it more difficult for them to qualify for mortgages and buy homes. In contrast, Plaintiffs contend, Caucasian sales associates were assigned to more affluent areas with more expensive homes and higher income customers.

Prior to filing this suit, each named Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging violations of 42 U.S.C. section 1981, Title VII of the Civil Rights Act, and the Lilly Ledbetter Fair Pay Act. Plaintiff Jacqueline Williams also filed a second charge of discrimination after KB Home filed its motion to dismiss.

In this lawsuit that was filed after the EEOC issued right-to-sue letters based on the first round of administrative charges, Plaintiffs assert four claims. First is a disparate treatment claim. It alleges that the discriminatory location assignments described above resulted in Plaintiffs being paid less than their Caucasian counterparts because KB Home's compensation is commission-based. In the alternative, Plaintiffs claim that even if locations were not assigned in a discriminatory manner, the commission pay structure nonetheless had a disparate impact on Plaintiffs.

Plaintiffs also bring a hostile work environment claim premised on their allegations that the communities to which they were assigned were dangerous and that other employees made harassing comments. Lastly, Plaintiffs assert a

retaliation claim, based on KB Home's purported retaliatory conduct against them for their complaints to management and requests to be transferred to more affluent areas.

KB Home's motion seeks to dismiss three of the four claims.   The motion challenges this Court's subject matter jurisdiction[1] over Plaintiffs' disparate impact claim on the ground that Plaintiffs failed to exhaust their administrative remedies.[2] KB Home also argues that Plaintiffs have failed to plead sufficient facts to state claims for hostile work environment and retaliation.   KB Home does not seek dismissal at this time of the disparate treatment claim.

## II.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Title VII requires that private sector employees exhaust their administrative remedies by filing a charge of discrimination with the EEOC before filing suit in federal court. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 & n.6 (5th Cir. 2006)).

---

[1] KB Home argues in its motion that exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit.  There is uncertainty in the case law concerning whether a failure to exhaust deprives the court of subject matter jurisdiction over the claim.  *See Lowe v. Am. Eurocopter, LLC*, No. 1:10CV24-A-D, 2010 WL 5232523, at *1 n.1 (N.D. Miss. Dec. 16, 2010). The Court need not resolve this issue since failure to exhaust is a basis for dismissal under either Rule 12(b)(1) or Rule 12(b)(6).

[2] KB Home also challenges the Court's subject matter jurisdiction on the ground of "misnomer," alleging that Plaintiffs' true employer is KB Home Lonestar Inc.  While the motion to dismiss was pending, Plaintiffs filed their Second Amended Complaint, Docket Entry No. 24, adding KB Home Lone Star Inc. as a defendant.  Because the Court finds that Plaintiffs have sufficiently pleaded that KB Home was their employer, and due to the fact-specific nature of the employment relationship inquiry, the Court will not dismiss the case against KB Home at this stage of the litigation.

"[C]ompeting policies underlie judicial interpretation of the exhaustion requirement." *Id.* (citing *Pacheco*, 448 F.3d at 788–89). "On one hand," the charge's scope "should be liberally construed . . . to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *Id.* (citation and internal quotation marks omitted). "On the other hand," Title VII's primary purpose aims resolve employment discrimination claims nonjudicially, through the EEOC's "investigatory and conciliatory procedures." *Id.* (citation and internal quotation marks omitted). With these competing policies in mind, a court must construe the charge "somewhat broadly," in terms of the investigation that "can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (citation and internal quotation marks omitted). The court "use[s] a 'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance." *McClain*, 519 F.3d at 273 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). A plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies." *Pacheco*, 448 F.3d at 792 (citing *Sanchez*, 431 F.2d at 463–65).

KB Home argues that Plaintiffs have failed to exhaust administrative remedies with respect to their disparate impact claim because they did not include this claim in their EEOC charges. Plaintiffs counter that investigation into whether

the commission policy had a disparate impact could reasonably be expected to follow from their charges.  The language of each of the five charges submitted by the named Plaintiffs is essentially identical and states, in relevant part:

> I was placed in sales communities with minority demographics, particularly African-American and Hispanic.  The other African-Americans were likewise placed in minority communities.  Our white counterparts were almost never placed in minority communities.  I complained about being stereotyped and put in minority communities to no avail.  KB Home felt that as a minority, I could only sell to other minorities.
>
> These minority communities in which African-American salespersons were placed targeted buyers of a lower socioeconomic status who had difficulty purchasing a home and qualifying for a mortgage.  Consequently, my earnings and sales were typically lower than that of my white counterparts who were placed in communities that were not predominantly African-American and/or Hispanic.  I had to work twice as hard as my white counterparts and still earned less.

*See, e.g.*, Docket Entry No. 20-1 at 1.[3]

---

[3] After Plaintiffs brought suit and KB Home filed its motion to dismiss, Plaintiff Jacqueline Williams filed a second charge of discrimination with the EEOC that more clearly sets forth the disparate impact claim.  *See* Docket Entry No. 26.  In a hearing on this motion, Plaintiffs' counsel told the Court that a right-to-sue letter from the EEOC had issued in response to this second charge.  Counsel referred to this second charge as an amendment to the first charge, but the charges are identified by different charge numbers and the second charge nowhere identifies itself as an amendment to the first charge.  *Compare* Docket Entry No. 26-1 *with* Docket Entry No. 20-1.  While an EEOC regulation allows for charges of discrimination to be amended and for those amendments to relate back to the original charge, *see* 29 C.F.R. § 1601.12(b), courts in this circuit interpreting this regulation have held in similar circumstances that an EEOC charge cannot be amended once the EEOC finishes processing a plaintiff's charge, issues a right-to-sue notice, and the plaintiff files suit.  *See, e.g., Lowe*, 2010 WL 5232523, at *3 (citations omitted); *Kelly v. Capitol One Auto Fin.*, No. 3:08-CV-0266-D, 2008 WL 2653202, at *4–5 (N.D. Tex. July 7, 2008) (citations omitted); *Hazeur v. Fed. Warranty Serv. Corp.*, No. 99-3156, 2000 WL 365013, at *2 (E.D. La. Apr. 7, 2000) (citation omitted).  Because Plaintiffs received a right-to-sue notice and filed suit on the first charge of discrimination, "there is no longer a viable charge pending before the EEOC that is capable of amendment."  *Hazeur*, 2000 WL 365013, at *2

The entire focus of this allegation is on KB Home's discriminatory placement of Plaintiffs in "sales communities with minority demographics." There is no basis from which the EEOC could reasonably infer that Plaintiffs were independently challenging the impact of KB Home's unmentioned commission policy in the event the allegations of discriminatory placement could not be proven. In reviewing an EEOC charge that similarly alleged only disparate treatment and failed to identify the neutral policy that later became the focus of a disparate impact claim, the Fifth Circuit found a failure to exhaust because "a disparate-impact investigation could not reasonably have been expected to grow out of [the plaintiff's] administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only." *Pacheco*, 448 F.3d at 792. All three circumstances are present in this case.

The importance of identifying the neutral employment policy in the EEOC charge is reinforced by the case Plaintiffs cite, *Reedy v. CITGO Petroleum Corporation*, No. H-10-2971, 2011 WL 797498 (S.D. Tex. Feb. 28, 2011). *Reedy* held that the plaintiff had properly exhausted administrative remedies with respect to his disparate impact claim because the plaintiff had specifically cited the facially

---

(citations omitted). Plaintiff Williams' attempt to amend the charge therefore "cannot, as a matter of law, relate back to her original charge." *Id.* The Court thus will not consider this second charge and takes no position on whether a new lawsuit could be filed based upon it.

neutral policy—the defendant's method of paying bonuses to its employees—in his charge of discrimination.  *Reedy*, 2011 WL 797498, at *9; *see also id.* (noting further that the plaintiff had also described the "disparate impact" this policy created in his response to the defendant's position statement).   Thus, while Plaintiffs' charges did not need to use the magic words "disparate impact," they must have included some information, such as a reference to the commission policy, that might reasonably lead the EEOC to investigate whether the facially neutral commission policy was having a disproportionately adverse effect on African-American salespersons.   Because even a broad reading of Plaintiffs' charges leads one to conclude that they alleged only disparate treatment, Plaintiffs have failed to exhaust their administrative remedies with respect to their disparate impact claim.

## III.   KB HOME'S SUBSTANTIVE CHALLENGES

### A.   Rule 12(b)(6) Standard

The Federal Rules require that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a claim for relief must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).   A "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" will not suffice.   *Id.* (quoting *Twombly*, 550 U.S. at 555, 557 (internal quotation marks and brackets omitted)).

### B.    Hostile Work Environment Claim

A hostile work environment claim consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and did not take prompt remedial action. *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citations omitted).   "For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive" when viewed in light of the "totality of the circumstances."  *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004) (citations omitted).  The conduct must be "so severe and pervasive" that it "destroys [an employee]'s opportunity to succeed in the workplace."  *Id.* at 326 (citation and internal quotation marks omitted).  Courts consider several factors in examining workplace hostility, including the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or a mere offensive utterance, and whether the conduct unreasonably

interferes with work performance or undermines workplace competence. *Id.* at 325–26 (citations omitted).

Plaintiffs' Second Amended Complaint contains allegations that Plaintiffs were placed in dangerous communities, that Plaintiffs worked late evenings and after dark without adequate security, that a dead body was found near one of the model home sites, and that "[c]oncerns for their safety were met with ridicule." Docket Entry No. 24 ¶ 26.  Plaintiffs further allege that KB Home employees told them they were assigned to the lower income communities because they "did not 'fit the demographic'" of the higher income communities and, in the case of one Plaintiff, because the people in the lower income communities were "his people." *Id.* ¶¶ 30, 58.

KB Home takes issue with Plaintiffs' reliance on the alleged dangerousness of the communities to which they were assigned because "the law is clear" that Title VII regulates only conduct in the workplace and not society in general. Docket Entry No. 17 at 7.  But KB Home relies on cases holding that a hostile work environment claim cannot be supported by dangerous conduct occurring outside of business hours and away from the workplace. *See Duggins ex. rel Duggins v. Steak 'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001) (holding that a rape occurring after working hours at a private location could not be the basis for a hostile work environment on the sole basis that the host of the party was a

nonsupervisory employee of the defendant); *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (holding that "conduct away from the workplace or outside business hours" was not actionable).  In contrast, courts have allowed hostile work environment claims like this one that are based on dangerous working conditions while on the job.  *See, e.g.*, *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 118, 120 (2d Cir. 2010) (reversing a grant of summary judgment against plaintiffs who had presented evidence of being assigned to work in dangerous areas as part of their hostile work environment claim); *Semsroth v. City of Wichita*, 304 F. App'x 707, 726 (10th Cir. 2008) (finding that a supervisor's failure to discipline a coworker for placing an employee in potential physical danger could support a hostile work environment claim); *Zelinski v. Penn. State Police*, 108 F. App'x 700, 704–05 (3d Cir. 2004) (finding a genuine issue of material fact as to whether defendants subjected plaintiff to a hostile work environment "[b]y failing to provide [plaintiff] with adequate protection").

KB Home also complains that Plaintiffs have generally failed to identify the level of severe and pervasive conduct required for hostile work environment claims, arguing that the allegations constitute no more than offhand comments and isolated incidents.  A plaintiff, however, is not required to include every incident of harassment that occurred in the workplace in his complaint.  Having determined

that the claimed dangerousness of the areas to which Plaintiffs were assigned is relevant, the Court is satisfied that Plaintiffs have stated sufficient facts, when viewed under the totality of the circumstances, to state a hostile work environment claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.  Indeed, if the danger is extreme enough, a single incident can be sufficiently severe and pervasive to establish a hostile work environment claim.  *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001) ("Because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening." (citations omitted)).  The claim thus should not be dismissed at the pleading stage.

### C.    Retaliation Claim

In a Title VII retaliation case, the plaintiff must make a prima facie showing: (1) that he engaged in a protected activity, (2) that an adverse employment action occurred, and (3) that there is a causal link between the protected activity and the adverse action.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted).  KB Home challenges that causal link as part of its motion to dismiss the retaliation claim, and at a hearing on this motion the Court expressed concerns about how the Plaintiffs can establish causation when they were apparently facing the same working conditions even before engaging in the protected activity.

An impending Supreme Court decision is expected to clarify the causation

standard that applies to retaliation claims.  *See Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448 (5th Cir. 2012), *cert. granted*, 133 S. Ct. 978 (2013).  In *Nassar*, the Supreme Court is considering whether the retaliation provision of Title VII requires "but-for causation" or whether a lesser "mixed motive" showing suffices. *See id*.   Because that case, which should be decided by June, may affect the causation issue in this case, the Court finds it prudent to await Supreme Court clarification before deciding this issue.

## IV.   CONCLUSION

For the foregoing reasons, KB Home's Motion to Dismiss (Docket Entry No. 17) is **GRANTED IN PART** and **DENIED IN PART**.  The disparate impact claim is dismissed.  The following claims will remain in this action:

(1)    Disparate Treatment;

(2)    Hostile Work Environment; and

(3)    Retaliation.

**IT IS SO ORDERED.**

**SIGNED** this 12th day of April, 2013.

_____
Gregg Costa
United States District Judge